**LYNCH CARPENTER, LLP**
Todd D. Carpenter (SBN 234464)
todd@lcllp.com
Scott G. Braden (SBN 305051)
scott@lcllp.com
9171 Towne Centre Dr, Ste 180
San Diego, CA 92122
Tel:   619-762-1910
Fax:   858-313-1850

*Attorneys for Plaintiff
and Proposed Class Counsel*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.K., individually on behalf of herself and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>WHITE DIAMOND, LLC, a California limited liability company, and DOES 1-50, inclusive,<br><br>    Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br><u>DEMAND FOR JURY TRIAL</u> |

Plaintiff L.K.[1] ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendant White Diamond LLC, a California limited liability company ("Defendant" or "White Diamond"), and Does 1 through 50, inclusive.

## <u>NATURE OF THE ACTION</u>

1.    This is a civil class action against Defendant for its false, misleading, deceptive, and negligent sales practices regarding its kratom products, which come in the form of loose powder, capsuled powder, liquid extract, and/or chewable tablet extract (collectively, the "Products"). Kratom is both a plant and a drug. Mitragynine ("MG") and

---

[1] Because this action concerns issues of addiction and medical status, Plaintiff is filing under her initials for the sake of her personal privacy.  Plaintiff is a reasonable consumer who fell victim to Defendant's omissions and misrepresentations about the addictive nature of kratom, which operates like an opioid, and became addicted as a result.  Since addiction issues are still wrongly stigmatized, Plaintiff is filing this matter anonymously but will reveal her name as necessary to the Court under seal.

7-Hydroxymitragynine ("7-OH") are the primary alkaloids—psychoactive chemicals—found in the kratom plant (*mitragyna speciosa*). The plant originates from Southeast Asia where its leaves have long been ingested to produce stimulant and opiate-like effects. Use of kratom in the United States was practically non-existent until the last decade. Since then, kratom has become a massively popular substance in the United States. This is because it is currently legal to consume, and because of the intense stimulant and opiate-like effects produced by MG and 7-OH.

2.      What consumers do not know is that the opiate-like effects produced by MG and 7-OH are *not* the result of some novel chemical interaction in the brain. Rather, these alkaloids are behaving, in part, exactly like opioids. That is, the MG and 7-OH found in the kratom plant activate the same opioid receptors in the human brain as *heroin, morphine,* and other prescription opioids, like hydro and oxycodone. Consequently, kratom consumption has the same (or worse)[2] risks of addiction, dependency, and painful withdrawal symptoms, among various other negative side effects.

3.      The general public is largely unaware of kratom and its addictive potential. When reasonable consumers think of opioids, they think of heroin, fentanyl, hydrocodone, oxycodone, or morphine; they do not think of loose powder kratom—a member of the *coffee* family—or liquid shots sold over the counter; nor do they expect the "botanical extract," "kratom alkaloid," "plant- based tonic," "full spectrum extract energy shot," or "herbal supplement" products[3] sold at their local gas stations and corner stores to behave like prescription opioids or street drugs, or carry their same risks of addiction and dependency. But MG and 7-OH Products do. Kratom is extremely addictive and *at least* tens of thousands of unsuspecting consumers have become unwillingly dependent on it, causing them serious physical, psychological, and financial harm.

---

[2] As discussed in this complaint, kratom arguably poses a greater risk than these substances because of its safe appearance as a result of Defendant's unlawful omission of fair warning to consumers about the dangers presented by the Products.

[3] All of these phrases appear on various kratom products' packaging, not necessarily Defendant's. Perhaps kratom's perniciousness is best demonstrated by the non-threatening variety of flavors and forms of certain products (e.g., "Mocha" flavored extract shot, "Berry Blend" "extract-infused" gummies).

4.      Defendant has intentionally failed to disclose the material facts regarding the dangers of addiction, physical and psychological dependence posed by consumption of its Products. Nowhere on the Products' labeling, packaging, or marketing material is any such warning or disclosure given.

5.      Defendant relies on its Products' *vague* packaging and consumers' limited knowledge of kratom[4] to get unsuspecting or casual users hopelessly addicted to them all for the sake of reaping *substantial* profits.[5] Defendant is aware of this ignorance and, instead of correcting it, relies on it—and actively cultivates it—to maximize sales. Such activity is outrageous and is contrary to California law and public policy.

6.      Plaintiff seeks relief in her action individually, and as a class action, on behalf of similarly situated purchasers of Defendant's Products, which are *still* on the market without any label warning about addiction, for the following violations of: (i) California's Unfair Competition Law, Bus. & Prof. Code § 17200*, et seq.* (the "UCL"); (ii) California's Consumer Legal Remedies Act, Civ. Code § 1750, *et seq.* (the "CLRA"); (iii) California's False Advertising Law, Bus. & Prof. Code § 17500, *et seq.* (the "FAL"); (iv) breach of implied warranty; (v) unjust enrichment; and (vi) fraud by omission.

## **JURISDICTION AND VENUE**

7.      This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because this case is a class action where the aggregate claims of all members of the proposed Classes (defined below), exclusive of interest and costs, exceed the sum or value of $5,000,000 and at least some members of the proposed Classes have a different state citizenship from Defendant.

8.      This Court has personal jurisdiction over Defendant because Defendant is an entity with constitutionally sufficient contacts with this District to make personal jurisdiction in this Court proper. Defendant is a California limited liability company with

---

[4] Even if some people are generally aware of it (they have "heard of it"), the vast majority of these people are still unaware of its opioid-like pharmacology.

[5] Many people are surprised to learn that kratom is a 1.5 billion dollar per year market. (*Florida's Unregulated Kratom Market*, NPR, https://www.npr.org/2024/01/31/1198909933/1a-draft-01-31-2024#:~:text=The%20Kratom%20industry%20is%20worth,in%20Florida%20the%20last%20decade (last visited Feb. 3, 2025)).

its principal place of business in this District. Accordingly, Defendant conducts sufficient business with sufficient minimum contacts in this District, and otherwise intentionally avails itself to this District's market through its operations and sales within the State of California and this District.

9.     Venue is proper under 28 U.S.C. § 1391(b)(1) because Defendant resides in this District. Venue is also proper under 28 U.S.C. § 1391(b)(2) because Plaintiff resides in this District and a substantial part of the events giving rise to Plaintiff's claims arose here.

**GENERAL ALLEGATIONS**

**A.     Background and Pharmacology of Kratom**

9.     "Kratom" refers to the substance derived from the leaves of a tropical plant, *mitragyna speciosa*, (the "kratom plant") indigenous to Southeast Asia, where it has been used in herbal medicine since the 19th Century. Kratom's first reported use in scientific literature was in 1836, when it was noted that Malays used kratom tree leaves as a substitute for opium. Historic use of the kratom plant was particularly well-documented in Thailand, Indonesia, and Malaysia, where kratom remains popular to this day.

10.     Kratom is the most widely used drug in Thailand. Its popularity there does not mean the Thai people believe it to be harmless. On the contrary, Thailand knows full well about kratom's dangers, as demonstrated by its ban of the substance in 1943.[6]  Kratom was also historically popular in Malaysia until it was banned in 1952 under the Poisons Act.

11.     Kratom's unknown and inconsistent effects have historically been part of its appeal. For instance, the earliest accounts of kratom use characterize it as having both a stimulant effect, achieved by chewing fresh kratom leaves during hard day-labor, and an analgesic or relaxing effect, which was obtained by brewing kratom into a tea.

---

[6] In 1943, Thailand banned the possession, use, and propagation of kratom, and later banned all kratom sales, imports, exports, and consumption all together. However, in 2021, Thailand decriminalized possession of kratom in response to a growing pressure on its justice system to fix the country's overcrowded prisons through liberalization of its drug laws.

12.     In the Western world, kratom is sold online and at herbal stores, gas stations, corner stores, smoke shops, and "head" shops, where it is primarily marketed as an herbal medicine or natural supplement to use to "treat" a variety of ailments (e.g., pain, mental health, opioid withdrawal symptoms), or to obtain a "legal" or "natural" high.

13.     To create consumable kratom products, kratom plant leaves are harvested, dried, and crushed into a fine powder that is then packaged and sold in pouches, capsules, or liquid formulations.[7]

14.     The chemicals in the kratom plant which produce a psychoactive effect when ingested are called "alkaloids." Alkaloids are a class of various naturally occurring organic chemical compounds. The primary alkaloids in kratom leaves responsible for the kratom's effects are MG and 7-OH.

15.     MG and 7-OH produce a wide spectrum of effects because they interact with many different receptors in the brain. Studies show that MG and 7-OH interact with alpha-2 adrenergic receptors (adrenaline), D2 dopamine receptors, and the serotonin receptors (5-HT2A and 5-HT2C), all of which contribute to kratom's mood-lifting and stimulant-like effects.

16.     Most crucially, MG and 7-OH also interact with the mu-opioid receptor.[8] The vast majority of consumers are unaware of this and, more than any other single fact, it is why Defendant's Product packaging must be legally required to include an adequate consumer warning. For instance, while both 7-OH and MG target the opioid-receptor, 7-OH is more potent than both MG and morphine. In fact, 7-OH's effect on the opioid receptors is approximately *forty-six* times that of MG, and *thirteen* times that of morphine. Both MG and 7-OH were found to be more potent to the mu-opioid receptor than morphine when taken orally.

---

[7] When kratom leaves are extracted into a liquid formulation, this is colloquially called a "kratom shot."

[8] The mu-opioid receptor produces the most addictive or habit-forming effects, such as euphoria and analgesia. For this reason, the mu-opioid receptor is known as "the gateway to addiction," because it is the receptor which all opioids interact with to produce the classic opioid high feelings of euphoria, sedation, and pain relief.

17.     Accordingly, kratom products are referred to as a "quasi-opiate" by health professionals because of its opioid-like characteristics.

18.     Opioids are addictive not only because of the pleasurable effects that they produce, but also because sudden cessation of opioid use causes severe withdrawal symptoms which users feel compelled to avoid by taking more of the drug. The tragedy of addiction is that users want to stop but cannot. Kratom is no different.

19.     All substances that act on the opioid receptors have a high risk of addiction, and kratom is no exception. Addiction occurs when an opioid is ingested on a regular basis and, over time, the user develops a tolerance to the drug that requires the user to consume an increased dose of the drug to achieve the same effects a lower dose previously had. As the doses increase, the body becomes dependent on the drug to feel normal and function properly. When the drug is suddenly taken away or the user tries to stop taking the drug, withdrawal occurs. Withdrawal symptoms cause the user to feel much worse than they did before they started taking the drug, and can be *extremely* painful and intolerable to the user.

20.     Indeed, kratom withdrawal symptoms are very similar to those of traditional opioid withdrawal. These symptoms include irritability, anxiety, difficulty concentrating, depression, sleep disturbance including restless legs, tearing up, runny nose, muscle and bone pain, muscle spasms, diarrhea, decreased appetite, chills, inability to control temperature, extreme dysphoria, and malaise.

21.     Users typically start substances like kratom because of how "good" it makes them feel, but once addicted, they use kratom to avoid the pain and sickness of withdrawal. Use is no longer about getting high, but about not feeling "sick." Once the addict is in this space, use is often referred to as "taking medicine" and causing the user to "get well."

**B.    Kratom Use and Addiction in the United States**

22.     Over the past decade, kratom has exploded in popularity within the United States. As of 2021, the American Kratom Association estimates that kratom is a $1.3 billion a year industry, with 11 million to 15 million annual users within the United States. Studies

show that 1 million United States residents use kratom monthly, and that two-thirds of those users use kratom daily.

23.    Kratom's popularity is attributed to several factors: first, kratom is marketed as a safe substitute for painkillers and so it appeals to consumers who falsely equate "natural" with "safe;" second, kratom has received media attention as a "nootropic" or "smart" drug because it is stimulating at low doses; third, kratom is widely available and unregulated within the United States; fourth, it produces a "pleasurable" high; and lastly, users are unaware of kratom's opioid-like characteristics, addiction, and withdrawal potential.

24.    Kratom is still a relatively unknown substance to the average consumer, and most people have never heard of it.

25.    Kratom sellers advertise it is a substitute for coffee, a pain reliever, a treatment for opioid withdrawal, an antidepressant, an anti-anxiety supplement, and that it improves focus and gives users a boost of energy to get through the day. Some even assure consumers that kratom is a non-addictive way to deal with opioid withdrawal. These kratom companies universally reiterate these purported "benefits" of kratom consumption, without disclosing any of the corresponding harms of kratom use.

26.    As a result of kratom manufacturers', retailers', and advertisers' failure to warn consumers of kratom's addictive potential, many kratom users find themselves blindsided when they stop taking kratom and find themselves facing severe withdrawal symptoms after having stopped using what they thought was a harmless supplement. Further, because kratom is relatively unknown in the United States, there are not well-established recovery resources for addicted users to turn to for resources and aid. Some kratom users turn to the Internet for support, and there are well-populated and very active Internet forum support groups for consumers struggling with, and recovering from, kratom addictions.

27.    The reports from addicted kratom users are heart-wrenching. Consistent among these reports is a feeling of initial shock when users realized they had become

unknowingly addicted to kratom, and how difficult it was to stop their kratom use. Below are several accounts from the "Quitting Kratom" forum on www.reddit.com, which has over 46,000 members as of January 2025:[9]

    i.    One user wrote:

I've been on a 50gpd [grams per day] habit for about 4 years.  Like most people here, **I was in denial that the Kratom was causing my multitude of issues. How could it be the Kratom when everyone keeps telling me how great it is?** I made myself believe that I had underlying issues that the Kratom was helping.  Spoiler: It wasn't.  **I slowly became a shell of the person I used to be. TRUE clinical depression symptoms with zero joy in my life.** I started browsing this subreddit and reading everyone's stories and I related to every single one.  **Everyone had the same exact experience I had and at that moment I knew it was the Kratom causing my depression.** (emphasis added).

    ii.    A gas station employee wrote:

I work at a gas station where we sell kratom such as powders, gold and silver pills and especially shots etc (you know which one I'm talking about) **it's just mind blowing to me how many people are practically addicted and how many customers literally scavenge their money to pay for their daily shot**. Why are people so addicted especially to those shots.

    iii.    Another user solicited "extract horror stories" – one user responded:

Took 2-3 shots a day for almost 2 years.  How did it screw me up?  Let me count the ways.  Financially it was draining me, 100%! **I would estimate 60% of my hair fell out.  My skin was grey.  My eyes were dark.  I became a hermit.** No longer wanted to do anything, including self care or hygiene.  Just taking a shower was a chore I had to talk myself into the last few months.  I

---

[9] *See* https://www.reddit.com/r/quittingkratom.

was disgusting and did not care at all. **All I cared about was that I had enough K for tomorrow.**

iv.    In response to the same "extract horror stories" post, another user responded: I used [kratom extract] pills and sometimes the shots for over 5 years. I'm now 290 days clean from them. **They were so hard to kick bc of how addicting they are.** And you can just walk in the store and buy them. I was spending $45 day on this stuff. **I wasted tens of thousands of dollars on it and my life suffered.** Lots of my hair fell out and it's only now starting to grow back some, I think most of it is gone for good. I'm repairing my marriage and friendships. Everything. Stay away from this stuff.

v.    Another user responded: Amen. This shit got hold of me as bad as anything else I've ever done... spent WAY more money on these fucking things than real honest to God hard drugs back in the day. **Anywhere from 6-10 of these things daily for... years. Let's call it 7 at an average of $18/pop = $126/day x 30 = $3780/month = about $45k/year.** How fucking embarrassing. I made $140,000 last year living in Georgia (pretty low cost of living) and pretty regularly get busted "borrowing" money from my 10 year old son. Fuck this; I'm not living like this anymore.

vi.    About 2 years ago, another user wrote: I saw 'A Leaf of Faith' and got the impression that kratom was a generally friendly substance to use freely, never knowing how addictive it was, how much it was further numbing me beyond how alcohol already was, how it was slowly wiping out my sex drive, and likely contributing to my perpetual brain fog. … My second attempt [at quitting] was maybe another 7 or 8 months later. Kratom was making me pretty miserable. I was reading posts in this subreddit and I was finally aware of how addicted I was; feeling crappy, sluggish, and sorta spacey pretty much all the time.

vii.    About 2 years ago, another user wrote:

What a difficult journey it has been.  I was a ~75 GPD [grams per day] user. **Quitting kratom was one of the hardest things I've had to do in my life.** I learned the hard way that kratom causes withdrawals on a work trip 3 years ago.  I should have stopped then and there but I gave in because the RLS was so bad. … **Kratom withdrawal is seriously no joke so don't think you're the only one struggling so much.**  I'm only a week free but after this experience I know for sure that I will never go back.  Good luck everyone! (emphasis added).

viii.    About 2 years ago, another user wrote a post titled *Kratom Is An Addictive Drug*.

It said, in part:

It's been 23 hours since my last dose.  **I just wanted to give my story hoping that it would help others see that they've been lied to, deceived and manipulated into thinking this plant is 'harmless and safe'.**  As a matter of fact, reading the horror stories on this subreddit was the first step in my recovery... I started taking it almost 3 years ago after hearing about it on... well, Reddit.  They touted it is a miracle plant that had all the benefits of an opioid with none of the side effects. (emphasis added).

ix.    Another user wrote:

**I think the perfect word to describe Kratom addiction is 'insidious'.**  Here is the definition – *'proceeding in a gradual, subtle way, but with harmful effects.'*  I think this is why it takes so long to realize what is going on.  There was never a rock bottom moment for me like there would be for other more conventional abused drugs.  No overdose, no bad behavior, no abusiveness to my family, no DWI, etc.. - It was just a lazy, slow descent into nothingness. I was living in a groundhogs day type of existence.  Wake up, go to work, leave work, buy an extract shot or 2, have dinner, drink my shot, mindlessly look at

my phone and/or watch TV.  Wake up and do it all over again. (italic emphasis in original, bold emphasis added).

 x. Another user wrote:

I started using k[ratom] when I had knee surgery Dec 2019 so 3 years.  **I didn't want to use pain killers because I got sober from alcohol 3/6/2018 and i felt the pain killers were going to make me relapse.**  I didn't know I would end up in a worst place as I am now. (emphasis added).

 xi. About 2 years ago, another user wrote:

Was in bed all day yesterday fighting withdrawals.  I used to even be an athlete - strong lean and fit, until I got on [kratom] shots and extracts.  Didn't even get high any more - just wanted to not feel bad.

 xii. About 4 years ago, another user wrote:

I researched kratom before using it and almost every site promoted that its harmless with healthy benefits, and that its withdrawals are like coffee for 3 days max. Information wasn't clear that kratom could become a negative addiction that takes months to recover" … "**I took something I thought was helping me for 1.5-2 years, not even knowing the downsides bc that information was so misleading. It fucked up my digestion, energy, mood, brain fog, anxiety, etc.  Fuck kratom, and fuck those who peddle it as a harmless cure-all**. (emphasis added)

 xiii. Another user wrote:

For any newcomers: this stuff is absolutely no joke.  It's not harmless and the wd [withdrawal] is *definitely* **not** like caffeine.  I've cold turkey'd caffeine before and I had a slight headache for a couple hours.  I definitely have never woken up in a pool of my own sweat from not having my caffeine. … **This stuff is a drug.  A serious drug.  And it's super freakin addictive**. ***Extracts, powder, or in my case, capsules…it doesn't matter***.  Yes some forms are

more addictive than others but the WD is hellacious no matter how you're

taking it." (emphasis added).

xiv.    Another user wrote:

This stuff is a drug, and dangerous!  **I started taking it because of all the**
**good things I heard and read about it**.  I've never been addicted to or
dependent on anything before, but this stuff has totally taken control of my
life. (emphasis added).

xv.    Another user wrote:

I finally realized a few weeks ago how much of a negative impact kratom was
having on my life.  I noticed myself planning my whole day around my doses
and making sure when I left the house I'd bring an extra dose with me in a
shaker bottle.  It was heavily affecting my mood overall, but especially in
public settings.  I did not want to leave my house most days even if I did dose.

xvi.    Another user wrote:

I have been taking OPMS black pills for about a year now.  It has ran my bank
dry.  When I wake up in the morning I fucking crave this shit.  I have never
been addicted to opiates or anything like that.  I get to the point where I am
going to go cold turkey and am so confident but when I wake up my brain
makes me think its okay to go get it.  I cant talk to anyone about this in my
family or friends.  I have a very high stress job and am also going through a
nasty break up.  I feel so alone with trying to stop and when I betray myself
and go to get more, i fight back tears in the parking lot (I am a grown ass man).
I am not an emotional person and in my environment theres no room for
emotions.  Should I tapper off?  What the fuck do I do?"

xvii.    Another user wrote:

I was taking one to two opms gold shots a day (sometimes three) for about
two years straight.  When the 24hr mark hit the withdrawals kicked in hard.  I
had become absolutely obsessed with scavenging 20$ togther to make sure I

got my shot each day.  Constantly driving to the shop, hoping no one would see me pop out.  I wanted to quit every night but just couldn't stand the withdrawals.  I finally quit (on day 17 ct) with the help of a quit buddy I found in this sub.  I'm still not right at all, RLS is there and my sleep is still off.  I'm sneezing more than I ever have.  But, music is back, I have more money in my pocket and I feel free from the grips.  I've still got a long ways to go but am committed to never touching that shit again.  It brought out the worst version of me."

28.    This Internet forum is filled with other accounts like these, and the stories are consistently the same—well-meaning people were looking to feel better by taking what they thought was an "herbal supplement," only to develop an opioid-like addiction.[10]  This anecdotal evidence makes clear that kratom's addictive potential is a material fact to reasonable consumers that, if known, would help inform their purchase and consumption decisions. However, Defendant's Products have no information whatsoever warning that kratom is similar to an opioid, is habit-forming, or that regular use will result in opioid-like dependency and withdrawal symptoms.

29.    Consumers who knew the truth about kratom may not have purchased Defendant's Products or would have paid less than they did for them.

**C.    Defendant Knew or Should Have Known it was Selling a Highly Addictive Drug to Unsuspecting Consumers**

30.    Despite kratom's traditional medical uses, the negative effects of kratom use have long been known and observed, and are well-documented in Southeast Asia where the plant originates and has a long period of historic use. Kratom addiction in Thailand and Malaysia has been studied and documented in the United States by scientists and researchers since at least 1988.

31.    Upon information and belief, Defendant has interacted with growers and distributors in Southeast Asia who have disclosed the addictive nature of kratom to it.

---

[10] There are now also *two* subreddit pages for people trying to quit 7-OH—**r/quitting7oh** (645 members as of January 2025) and **r/stopping7oh** (226 members as of January 2025).

32.     Even without such interactions, Defendant received numerous user reports about the addictive potential of kratom in the United States.

33.     Defendant therefore knew or should have known that the Products it was selling were highly addictive.

34.     Despite this knowledge, Defendant failed to disclose kratom's addictive potential to its customers on its website or on its Products' packaging.

35.     Defendant has no excuse for its lack of a detailed disclaimer warning on its Products packaging of kratom's harms. The pharmacological effects of MG and 7-OH have been thoroughly studied, and it is well-established that kratom acts on the same mu-opioid receptors in the brain as traditional opioids do. Further, there are widespread reports and studies of other addiction and dependency issues.

36.     Defendant therefore knows or should have known that kratom users can develop an addiction. Yet, Defendant fails to disclose this material fact on its advertisements or on its Products' packaging.

37.     Despite this, Defendant markets its Products as if they are nothing more than over-the-counter supplements.  Indeed, the packaging looks more like allergy medication than a dangerously strong opioid, and Defendant's glossy website and design language obfuscates the very real truth that it is selling a strong narcotic to consumers who likely do not fully comprehend the risks associated with consuming the Products.

38.     Like Plaintiff's experiences described below, consumers may walk into the local headshop and see Defendant's Product and be enticed into purchasing it because they think it looks inviting and, if it was dangerous, there would be a warning on the package.

39.     Reasonable consumers looking at the Products' packaging and online store description would not presume that kratom is highly addictive.

40.     Nowhere on the packaging does Defendant mention that kratom presents the same addiction problems that former opioid users and any other consumers would want to avoid. Consumers seeking help as they come off opioids may be drawn in by Defendant's

misleading statements about kratom without knowing that they risk trading one addiction for another.

41.    As a kratom product seller, manufacturer and/or distributor, Defendant occupies a position of superior knowledge to the average reasonable consumer, who likely knows nothing about kratom.

42.    The information provided on Defendant's Products' packaging in particular is woefully sparse. Representative images of Defendant's Products are depicted below:



White Diamond Red Bali Capsules



White Diamond "Trainwreck" Capsules



White Diamond Maeng Da Capsules



White Diamond Extract Capsules



White Diamond Liquid Extract Shot

CLASS ACTION COMPLAINT

43.    On Defendant's website where it sells these Products, Defendant does not provide any image of the back of the Product's bottle or show any ingredient list on the bottle or on the Product's webpage.[11]

44.    Defendant does not provide any warning to consumers on its Products' packaging or webpage where it sells its Products that its Products interact with opioid receptors or are highly addictive and should not be taken on a daily basis, or note any of the numerous negative side effects and withdrawal symptoms caused by its Products.

45.    Indeed, the entire contents of the warning on the Product's webpage is a bog-standard disclaimer stating:

Do not use if you are pregnant or nursing. It is illegal to possess Kratom** if under 21 years of age (or depending on your local and/or state laws). Consult your healthcare professional before using. Do not combine with alcohol or medication. By taking these products you accept full responsibility for all it's usage but not limited to any adverse events or health complications. Consult with a doctor prior to usage if you have any heart disease, liver disorder, high blood pressure, a medical condition or take medication. Manufacturers/Re-Sellers assume no responsibility for the use or misuse of these products.[12]

46.    Additionally, Defendant's website contains an FAQ (Frequently Asked Questions) page stating:

Is Kratom safe?

When used responsibly and in moderation, Kratom is generally considered safe. However, it's essential to be aware of the potential interactions with certain medications and the importance of finding the appropriate dosage for

---

[11] *See* White Diamond Kratom,  https://whitediamondkratoms.com/shop/ols/products/maeng-da-kratom-powder (last accessed Feb. 10, 2025).

[12] White Diamond Kratom, https://whitediamondkratoms.com/ (last accessed Feb. 10, 2025).

your needs. As with any botanical supplement, it's advisable to consult with a healthcare professional before use.[13]

47.    These boilerplate disclaimers are plainly insufficient. This is a Product that poses a serious risk of intense addiction and withdrawal in line with traditional "hard" opioids. Further, the "Is Kratom safe?" FAQ response gives the impression that Defendant's Products are perfectly safe for consumption and says nothing about their propensity for addiction.

48.    Addiction is a disease.  As such Defendant's Products pose an unreasonable health hazard, and Defendant had and has a duty to disclose this fact on its Products' packaging.

49.    What's more, nothing about the Products' packaging would lead reasonable consumers to believe they were purchasing compounds similar to opioids, that function on the same mu-opioid receptors in the brain.  It looks as innocuous as a vitamin supplement.

50.    Defendant, through its misleading advertising and its failure to disclose kratom's addictive properties on its Products' labels, relied upon the average consumer's incomplete knowledge of kratom to better sell its Products and get users addicted to them.

51.    Defendant fails to disclose kratom's addictive potential because Defendant knows that it is a material fact to reasonable consumers which would influence their purchasing and consumption decisions, likely to Defendant's financial detriment.

52.    By any metric, Defendant's conduct is immoral, unethical, and contrary to public policy.

53.    The United States is going through an opiate crisis that is shaking the foundations of our society. Amid this crisis, Defendant is creating more addicts for no reason other than to line its pockets, without adequate disclosure of its Products' risks through the use of false and misleading packaging and marketing. That cannot–and should not–be allowed, at least when Defendant's conduct entails breaches of warranty and violation of state consumer protection statutes as it does here.

---

[13] White Diamond Kratom, https://whitediamondkratoms.com/faq (last accessed Feb. 10, 2025).

## **PARTIES**

54.     Plaintiff L.K. is a resident and citizen of Riverside, California. In or around October 2022, while recovering from surgery and on vacation in Tennessee, she was introduced to kratom as a natural option for pain relief. Unaware of any risks and given no warnings—either about kratom generally or White Diamond specifically—Plaintiff purchased White Diamond powdered capsules. She continued using them upon returning to California and quickly developed a dependency, eventually becoming a daily user and consuming several grams per day. During this time, she purchased White Diamond capsules regularly from smoke shops in Jurupa Valley and Riverside.

55.     The first time Plaintiff purchased White Diamond and several times thereafter, she reviewed the product's label and found no warnings whatsoever—no mention of addiction or any side effects at all. At her peak usage between 2023 and 2024, Plaintiff was taking approximately fifteen capsules per day.[14] She soon realized that without kratom, she would suffer significant withdrawal symptoms: shaking, excessive sweating, severe bouts of anxiety, irritability, and flu-like illness. The worst of these symptoms lasted a week, and many lingered for a month. Only after quitting did Plaintiff discover that kratom had caused her to suffer long-term effects, including chronic constipation and notable weight gain. Had White Diamond's packaging disclosed its addictive nature, Plaintiff never would have purchased or consumed it.

56.     Defendant White Diamond LLC is a California limited liability company with its principal place of business in Los Angeles, California. Defendant owns and operates the White Diamond website, https://whitediamondkratoms.com/, and also advertises, markets, distributes, and sells its numerous White Diamond Kratom Products in California and throughout the United States. Defendant's Products are sold over the counter primarily in smoke ("head") shops and corner stores.

57.     Plaintiff does not know the true names or capacities of the persons or entities sued herein as Does 1-50, inclusive, and therefore sue such defendants by such fictitious

---

[14] Each White Diamond powder capsule contains approximately 500 mg of kratom powder. Thus, Plaintiff was consuming approximately 7.5 grams per day (GPD).

names. Plaintiff is informed and believes, and upon such information and belief alleges, that each of the Doe defendants is, in some manner, legally responsible for the damages suffered by Plaintiff and members of the proposed Classes as alleged herein. Plaintiff reserves the right to amend this Complaint to set forth the true names and capacities of these defendants when they are ascertained, along with appropriate charging allegations, as may be necessary.

## CLASS ALLEGATIONS

58.    Plaintiff brings this action pursuant to Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of herself and all other Class members, defined as follows:

> All persons nationwide who, within the applicable statute of limitations period, purchased White Diamond kratom Products (the "Nationwide Class").

> All persons who, within the applicable statute of limitations period, purchased White Diamond kratom Products while in California (the "California Class").

59.    Excluded from the Classes are Defendant, as well as its officers, employees, agents or affiliates, parent companies and/or subsidiaries, and each of their respective officers, employees, agents or affiliates, and any judge who presides over this action. Plaintiff reserves the right to expand, limit, modify, or amend these Class definitions, including the addition of one or more subclasses, in connection with her motion for Class certification, or at any other time, based upon, inter alia, changing circumstances and/or new facts obtained during discovery.

60.    ***Numerosity***: The Class members are so numerous that joinder of all members is impracticable. Plaintiff is informed and believes that the proposed Classes contain at least thousands of consumers throughout California and the United States who have been damaged by Defendant's conduct as alleged herein. The precise number of Class members is unknown to Plaintiff at this time.

61. ***Existence and Predominance of Common Questions of Law and Fact***: This action involves common questions of law and fact, which predominate over any questions affecting individual members of the Classes. These common legal and factual questions include, but are not limited to, the following:

a. whether the labels on Defendant's Products have the capacity to mislead reasonable consumers;

b. whether Defendant knew that kratom is a highly addictive substance that causes physical and psychological dependence and opioid-like withdrawal symptoms;

c. whether Defendant's conduct alleged herein violated the FAL, CLRA, and/or the UCL;

d. whether Defendant's conduct alleged herein constitutes unjust enrichment;

e. whether Defendant's conduct constitutes a fraudulent omission;

f. whether Plaintiff and the Classes are entitled to damages and/or restitution; and

g. whether an injunction is necessary to prevent Defendant from continuing to sell its Products without warning labels of their addictiveness.

62. ***Typicality***: Plaintiff's claims are typical of the claims of the Classes in that Plaintiff and the Class members sustained damages as a result of Defendant's uniform wrongful conduct, based upon Defendant's failure to inform Plaintiff and all others similarly situated that its Products are highly addictive and akin to opioids.

63. ***Adequacy***: Plaintiff will fairly and adequately protect the interests of the members of the Classes. Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no antagonistic or adverse interests to those of the Classes.

64. ***Superiority***: A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, *inter alia*, the following reasons:

prosecutions of individual actions are economically impractical for members of the Classes; the Classes are readily definable; prosecution as a class action avoids repetitious litigation and duplicative litigation costs, conserves judicial resources, and ensures uniformity of decisions; and prosecution as a class action permits claims to be handled in an orderly and expeditious manner.

65.    Defendant has acted or failed to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief with respect to the Classes as a whole.

66.    Without a class action, Defendant will continue a course of action that will result in further damages to Plaintiff and members of the Classes, and the general public—who are also negatively impacted by the dregs of addiction—and will likely retain the benefits of Defendant's wrongdoing.

67.    Based on the forgoing allegations, Plaintiff's claims for relief include those set forth below.

68.    Plaintiff is informed that Defendant keeps extensive computerized records through its online sales data, as well as through, *inter alia*, general marketing programs. Defendant has one or more databases through which a significant majority of the members of the Classes may be identified and ascertained, and Defendant maintains contact information, including email and home addresses, through which notice of this action could be disseminated in accordance with due process requirements.

## FIRST CAUSE OF ACTION
### Violation of California's Unfair Competition Law ("UCL")
### Bus. & Prof. Code, § 17200, *et seq.*
### *(On Behalf of Plaintiff and the California Class)*

69.    Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs.

70.    Plaintiff brings this cause of action individually and on behalf of the members of the proposed California Class against Defendant.

71.     The UCL prohibits unfair competition in the form of "any unlawful, unfair, or fraudulent, business act or practice and unfair, deceptive, untrue or misleading advertising and any act[.]" A practice is unfair if it (1) offends public policy; (2) is immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers. The UCL allows "a person who has suffered injury in fact and has lost money or property" to prosecute a civil action for violation of the UCL. Such a person may bring such an action on behalf of himself or herself and other similarly situated who are affected by unlawful and/or unfair business practices or acts.

72.     As alleged below, Defendant has committed unlawful, fraudulent, and/or unfair business practices under the UCL by (a) representing that its kratom Products have certain characteristics that they do not, in violation of Cal. Civ. Code § 1770(a)(5); (b) advertising goods and services with the intent not to sell them as advertised, in violation of Cal. Civ. Code § 1770(a)(9); (c) selling addictive substances to unsuspecting consumers and profiting from their addiction; and (d) failing to disclose that its kratom Products pose a serious risk of addiction.

73.     Defendant's conduct has the capacity to mislead a significant portion of the general consuming public and to target consumers, acting reasonably in the circumstances.

74.     Defendant's conduct has injured Plaintiff and the California Class she seeks to represent in that they paid money for a Product that they would not have purchased, or paid more than they would have, but for Defendant's failure to disclose the addictive nature of its kratom Products. Such injury is substantial and is not outweighed by any countervailing benefits to consumers or competition. Indeed, no benefit to consumers or competition results from Defendant's conduct. Since consumers reasonably rely on Defendant's labels, and thus also Defendant's omissions, consumers themselves could not have reasonably avoided such injury.

75.     Moreover, Defendant's Products pose an unreasonable health hazard because kratom is highly addictive and may induce serious withdrawal symptoms.  Accordingly,

Defendant had a duty to consumers to disclose on the Products' labels that its kratom Products pose a risk of physical and psychological dependence.

76.    Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff and the California Class members seek an order of this Court that includes, but is not limited to, an order requiring Defendant to (a) provide restitution to Plaintiff and the other California Class members; (b) disgorge all revenues obtained as a result of Defendant's violations of the UCL; and (c) pay Plaintiff and the California Class members' attorneys' fees and costs.

77.    Here, equitable relief is appropriate because Plaintiff may lack an adequate remedy at law if, for instance, damages resulting from her purchase of the Products is determined to be an amount less than the premium price of the Products. Without compensation for the full premium price of the Products, Plaintiff would be left without the parity in purchasing power to which she is entitled.

### SECOND CAUSE OF ACTION
**Violation of California's False Advertising Law ("FAL")**
**Bus. & Prof. Code, § 17500, *et seq.***
***(On behalf of Plaintiff and the California Class)***

78.    Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

79.    Plaintiff brings this claim individually and on behalf of the California Class against Defendant.

80.    Defendant's acts and practices, as described herein, have deceived, and are likely to continue to deceive, California Class members and the public at large. As described above and throughout this Complaint, Defendant failed to disclose that kratom is addictive on its Products' packaging.

81.    Defendant disseminated uniform advertising regarding its kratom Products to and across California. This advertising was, by its very nature, unfair, deceptive, untrue, and misleading within the meaning of the FAL. Such advertisements were intended to, and likely did, deceive the consuming public for the reasons detailed herein.

82.    The above-described false, misleading, and deceptive advertising Defendant disseminated continues to have a likelihood to deceive because Defendant continues to misrepresent that kratom is not addictive.

83.    Defendant knew, or should have known, that in making and disseminating these statements, its advertisements were untrue and misleading in violation of California law. Defendant knows that kratom is addictive yet fails to disclose this fact to consumers.

84.    Plaintiff and the California Class members purchased Defendant's Products based on Defendant's misrepresentations and omissions indicating that kratom is not addictive.

85.    Defendant's misrepresentations and non-disclosures of the material facts described herein constitute false and misleading advertising and, therefore, constitute a violation of the FAL.

86.    As a result of Defendant's wrongful conduct, Plaintiff and California Class members lost money in an amount to be proven at trial. Plaintiff and the California Class are therefore entitled to restitution as appropriate for this cause of action.

87.    Plaintiff and the California Class seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Defendant's unfair, unlawful, and fraudulent business practices; declaratory relief; reasonable attorneys' fees and costs under Cal. Civ. Proc. Code § 1021.5; and other appropriate equitable relief.

### THIRD CAUSE OF ACTION
**Violation of California's Consumers Legal Remedies Act ("CLRA"),**
**Civ. Code, § 1750, *et seq.***
***(On behalf of Plaintiff and the California Class)***

88.    Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

89.    Plaintiff brings this claim individually and on behalf of the California Class against Defendant.

90.    Plaintiff and California Class members are consumers within the meaning of Civ. Code § 1761(d) of the CLRA.

91.   Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which she or he does not have."

92.   Civ. Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

93.   Civ. Code § 1770(a)(9) prohibits "advertising goods or services with intent not to sell them as advertised."

94.   Defendant violated Civ. Code §§ 1770(a)(5), (a)(7), and (a)(9) by failing to disclose that its kratom Products are addictive, an unreasonable health hazard and necessarily a fact which is material to reasonable consumers.

95.   Defendant's misrepresentations and omissions deceived, and have a tendency and ability to deceive, the general public.

96.   Defendant has exclusive or superior knowledge of kratom's addictive nature, which was not known to Plaintiff or California Class members.

97.   Plaintiff and California Class members have suffered harm as a result of these violations of the CLRA, Civ. Code § 1750, because they have incurred charges and/or paid monies for the Products that they otherwise would not have incurred or paid had they known that kratom is addictive and causes withdrawals. As a result, Plaintiff and the California Class are entitled to actual damages in an amount to be proven at trial, reasonable attorney's fees and costs, declaratory relief, and punitive damages.

98.   On April 9, 2025, Plaintiff's counsel sent Defendant a CLRA notice letter, which complies in all respect with § 1782(a). The letter was sent via certified mail, return receipt requested, and advised Defendant that it was in violation of the CLRA and demanded Defendant cease and desist from such violations and make full restitution by refunding the monies received therefrom. The CLRA letter stated that it was sent on behalf of all other similarly situated purchasers.

## FOURTH CAUSE OF ACTION
### Breach of Implied Warranty
#### *(On behalf of Plaintiff and the Nationwide Class)*

99.    Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

100.    Plaintiff brings this claim individually and on behalf of the Nationwide Class against Defendant.

101.    Defendant, as the designer, manufacturer, marketer, distributor, and/or seller of the Products, impliedly warranted that kratom is not addictive and does not cause opioid-like withdrawal symptoms because it did not provide disclosure on the Products' packaging stating otherwise.

102.    Defendant breached its warranty implied in the contract for the sale of its kratom Products because the Products could not pass without objection in the trade under the contract description: the kratom Products were not adequately contained, packaged, and labeled as per Defendant's contract with Plaintiff and the Nationwide Class members, and the Products do not conform to the implied affirmations of fact made on the marketing and packaging for the Products that the Products are not addictive and do not cause withdrawals. U.C.C. §§ 2-313(2)(a), (e), (f). As a result, Plaintiff and the members of the Nationwide Class did not receive the goods as impliedly warranted by Defendant to be merchantable.

103.    Plaintiff and the Nationwide Class members purchased the kratom Products in reliance upon Defendant's skill and judgement and the implied warranties of fitness for the purpose.

104.    The kratom Products were defective when they left Defendant's exclusive control.

105.    Plaintiff and the Nationwide Class did not receive the goods as warranted.

106.    As a direct and proximate cause of Defendant's breach of its implied warranty, Plaintiff and the Nationwide Class have been injured and harmed because (i) they would not have purchased Defendant's Products on the same terms if they knew that the Products

were addictive and could cause opioid-like withdrawal symptoms; and (ii) the Products do not have the characteristics, uses, or benefits as promised by Defendant.

107. On April 9, 2025, Plaintiff's counsel sent Defendant via certified mail a notice letter on behalf of Plaintiff that complied in all respects with U.C.C. §§ 2-314 and 2-607. This notice letter advised Defendant that it breached an implied warranty and demanded Defendant cease and desist from such breaches and make full restitution by refunding the monies received therefrom.

### FIFTH CAUSE OF ACTION
**Unjust Enrichment**
***(On behalf of Plaintiff and the Nationwide Class)***

108. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as fully stated herein.

109. Plaintiff brings this claim individually and on behalf of the Nationwide Class members against Defendant.

110. Plaintiff and the Nationwide Class conferred a benefit on Defendant in the form of the gross revenues Defendant derived from the money they paid to Defendant.

111. Defendant had an appreciation or knowledge of the benefit conferred on it by Plaintiff and the Nationwide Class members.

112. Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and the Nationwide Class members' purchases of the Products, and retention of such revenues under these circumstances is unjust and inequitable because Defendant failed to disclose on the Products' packaging that the Products were addictive and similar to opioids. This caused injuries to Plaintiff and the Nationwide Class because they would not have purchased the Products or would have paid less for them if the true facts concerning the Products had been known.

113. Defendant accepted and retained the benefit in the amount of the gross revenues it derived from sales of the Products to Plaintiff and the Nationwide Class members.

114.    Defendant has thereby profited by retaining the benefit under circumstances which would make it unjust for Defendant to retain the benefit.

115.    Plaintiff and the Nationwide Class members are, therefore, entitled to restitution in the form of the revenues derived from Defendant's sale of the Products.

116.    As a direct and proximate result of Defendant's actions, Plaintiff and the Nationwide Class members have suffered in an amount to be proven at trial.

117.    Here, equitable relief is appropriate because Plaintiff may lack an adequate remedy at law if, for instance, damages resulting from her purchase of the Products is determined to be an amount less than the premium price of the Products, Plaintiff would be left without the parity in purchasing power to which she is entitled.

118.    Restitution may also be more certain, prompt, and efficient than other legal remedies requested herein. The return of the full premium price will ensure that Plaintiff is in the same place she would have been in had Defendant's wrongful conduct not occurred, i.e., in the position to make an informed decision about the purchase of the Products absent omissions with the full purchase price at her disposal.

## SIXTH CAUSE OF ACTION
### Fraud by Omission
### *(On behalf of Plaintiff and the Nationwide Class)*

119.    Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

120.    Plaintiff brings this claim individually and on behalf of the Nationwide Class against Defendant.

121.    Defendant distributed its Products throughout the United States, including within the state of California.

122.    Defendant misrepresented that its kratom Products had attributes or qualities that they do not have by failing to disclose that kratom is addictive and can cause opioid-like withdrawal.

123.    Defendant knows that kratom is addictive because it interacts with kratom vendors and has been made aware of user reports and kratom studies.

124.   Defendant knows that knowledge of kratom's addictive nature is a material fact that would influence the purchasing decision of reasonable consumers because addiction is an unreasonable health hazard.

125.   Defendant therefore had a duty to Plaintiff and to the Nationwide Class members to disclose that kratom is addictive and can cause withdrawals on the Products' packaging.

126.   Consumers reasonably and justifiably relied on Defendant's omissions, because it is reasonable to assume that a Product which is addictive like an opioid would bear a warning on its packaging.

127.   As a result of Defendant's omissions, Plaintiff and the Nationwide Class paid for kratom Products they may not have purchased, or paid more for those Products than they would have, had they known the truth about kratom.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself, and on behalf of the Classes, respectfully requests this Court award relief against Defendant as follows:

a.     an order certifying the Classes and designating Plaintiff as the Class Representative and her counsel as Class Counsel;

b.     for an order declaring Defendant's conduct violates the statutes referenced herein and finding in favor of Plaintiff and the Classes on all counts asserted herein;

c.     award Plaintiff and members of the Classes actual, consequential, punitive, and statutory damages, as appropriate;

d.     for prejudgment interest on all amounts awarded;

e.     award restitution and disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiff and the members of the Classes as a result of Defendant's unlawful, unfair, and fraudulent business practices described herein;

f.     award declaratory and injunctive relief as permitted by law or equity, including enjoining Defendant from continuing its unlawful practices set forth

herein, and directing Defendant to identify, with Court supervision, victims of its misconduct and pay them all money it is required to pay;

g.    order Defendant to engage in a corrective advertising campaign;

h.    award attorneys' fees and costs; and

i.    award any other further relief as the Court may deem necessary or appropriate.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

Dated: April 9, 2025                    **LYNCH CARPENTER, LLP**

By:  */s/Todd D. Carpenter*
Todd D. Carpenter (SBN 234464)
todd@lcllp.com
Scott G. Braden (SBN 305051)
scott@lcllp.com
9171 Towne Centre Dr, Ste 180
San Diego, CA 92122
Tel:  619-762-1910
Fax:  858-313-1850

*Attorneys for Plaintiff and
Proposed Class Counsel*

CLASS ACTION COMPLAINT